**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

GABRIELA RODRIGUEZ DE RANGEL,
a/k/a Gabriela Rangel, a/k/a Gabriela
Rodriguez,

    Defendant - Appellant.

No. 16-5126
(D.C. No. 4:15-CR-00165-JHP-1)
(N.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE**, **HOLMES**, and **PHILLIPS**, Circuit Judges.

    Gabriela Rodriguez De Rangel appeals her conviction for possessing

methamphetamine with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and

(b)(1)(C) . She argues that the jury was incorrectly instructed regarding constructive

possession. Exercising jurisdiction under 28 U.S.C. §1291, we affirm.

---

    [*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
submitted without oral argument. This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel. It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

BACKGROUND

On October 4, 2015, Oklahoma Highway Patrol (OHP) troopers stopped De Rangel's SUV because of a non-functioning brake light and an improperly displayed tag. A drug dog subsequently alerted near the rear bumper. When the troopers told De Rangel they intended to search the SUV, she "panicked" and said "No, but my boyfriend - - the car - - how do you say - - llanta[?]." R., Vol. II at 126. "Llanta" is the Spanish word for "tire." Troopers cut into the SUV's spare tire and found 875.2 grams of methamphetamine.

After being arrested, De Rangel told DEA agents that she was traveling to Tulsa from Phoenix, where she had met "with some guys" who loaded drugs into her tire. *Id.* at 119. She expected to be compensated for her trip.

With De Rangel's consent, Tulsa Police Officers searched her Tulsa home. In her bedroom, they found digital scales and a baggie containing 25.8 grams of methamphetamine. She was charged with possessing methamphetamine with intent to distribute.

At trial, De Rangel provided a different story. She testified that in late September she drove to Phoenix to shop and to deliver $25,000 (that had been stashed in her SUV's spare tire) to her stepdaughter's boyfriend. According to De Rangel, the boyfriend planned to use the money to invest in a car dealership and he promised to pay her $5,000. After De Rangel arrived in Phoenix, some "guys" took the tire, *id.*, Vol. II at 183, and returned it several days later without paying her. She then drove back to Tulsa, allegedly unaware that methamphetamine had been placed inside the tire.

De Rangel further claimed that after being stopped by troopers, they mistranslated her statements "[b]ecause [she] would tell [the Spanish-speaking trooper] one thing about the money and he would [translate] that [into] 'you went to get drugs.'" *Id.* at 190. She also said that many other people lived in her house and that she would not have consented to the search if she had known drugs were there.

The jury convicted De Rangel as charged, and the court sentenced her to 51 months' imprisonment.

## DISCUSSION

De Rangel contends that her conviction for possession with intent to distribute must be reversed because of instructional error. She asserts that the jury instruction given enabled the jury to find that she constructively possessed the methamphetamine in the tire and in her bedroom simply by "knowingly ha[ving] the power at a given time to exercise dominion or control over [it]." R., Vol. I at 42.[1]

---

[1] In larger part, the jury instruction defining actual or constructive possession stated:

> The law recognizes two kinds of possession: actual possession and constructive possession. A person who knowingly has direct physical control over an object or thing, at a given time, is then in actual possession of it.
> A person who, although not in actual possession, *knowingly has the power at a given time to exercise dominion or control over an object*, either directly or through another person or persons, is then in constructive possession of it.

R., Vol. I at 42 (emphasis added).

3

Ordinarily, "[w]e review de novo the jury instructions as a whole and view them in the context of the entire trial to determine if they accurately state the governing law and provide the jury with an accurate understanding of the relevant legal standards and factual issues in the case." *United States v. Vernon*, 814 F.3d 1091, 1103 (10th Cir.) (internal quotation marks omitted), *cert. denied*, 137 S. Ct. 58 (2016). But since De Rangel did not object to the constructive-possession instruction, we review only for plain error. *See United States v. LaVallee*, 439 F.3d 670, 684 (10th Cir. 2006). Under plain error review, De Rangel must show that "there is (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Gonzalez–Huerta*, 403 F.3d 727, 732 (10th Cir. 2005) (en banc).

The government concedes that the instruction was erroneous, as it failed to require an intention to exercise dominion or control, not just the power to do so. *See United States v. Little*, 829 F.3d 1177, 1182 (10th Cir. 2016) (observing that the Supreme Court in *Henderson v. United States*, 135 S. Ct. 1780 (2015), "held that constructive possession requires both power to control an object and intent to exercise that control"). The government also acknowledges that the error alleged here is plain error, as the issue had been settled by the time De Rangel filed her direct appeal. *See United States v. Cordery*, 656 F.3d 1103, 1106 (10th Cir. 2011) (noting that an error is plain "where the Supreme Court or this court has addressed the issue or where the district court's interpretation was clearly erroneous," and that "plain error is measured at the time of appeal" (brackets and internal quotation marks omitted)).

4

The government's concessions end, however, after conceding the first and second prongs of plain error. The government argues that De Rangel fails to establish the third prong, where she "must show a reasonable probability that, but for the error claimed, the result of the proceeding would have been different," *id.* at 1108 (internal quotation marks omitted). De Rangel argues that if the jury had been properly instructed she likely would have been acquitted based on her testimony that "the trip [to Phoenix] was about transporting money," and that "she had not been home for seven days prior to the search [of her house] and did not know about the drugs." Aplt. Opening Br. at 11. We disagree. Despite her testimony, the jury found that she had intended to distribute methamphetamine. As this court recently noted in *United States v. Simpson*, 845 F.3d 1039, 1060 (10th Cir. 2017), a defendant "could intend to distribute [drugs] only if [s]he intended to possess [those drugs], for [s]he could not distribute something that [s]he didn't have." In other words, it is nonsensical "to assert that the same jury that found that [De Rangel] intended to distribute the [drugs] could have simultaneously found that [s]he did not intend to possess [them]." *Id.* (brackets and internal quotation marks omitted). Thus, the erroneous instruction had no effect on the jury's deliberative process, as the jury nevertheless determined, in light of the instruction given describing the elements for

5

possession with intent to distribute,[2] that De Rangel intended to exercise dominion and control over the methamphetamine found in her tire and bedroom.

## CONCLUSION

We affirm De Rangel's conviction.

Entered for the Court


Mary Beck Briscoe
Circuit Judge

---

[2] The jury instruction for possessing a controlled substance with intent to distribute provided:

> To find the defendant guilty of this crime you must be convinced that the government has proved each of the following beyond a reasonable doubt:
>
> *First*: the defendant knowingly or intentionally possessed a controlled substance as charged;
> *Second*: the substance was in fact methamphetamine;
> *Third*: the defendant possessed the substance with the intent to distribute it.
>
> To "possess with intent to distribute" means to possess with intent to deliver or transfer possession of a controlled substance to another person, with or without any financial interest in the transaction.

R., Vol. I at 37.